Patrick John MELIN,
Petitioner, Respondent,

v.

COMMISSIONER OF PUBLIC SAFETY, Appellant.

No. C2–85–1816.

Court of Appeals of Minnesota.

March 25, 1986.

Roger A. Gershin, Minneapolis, for respondent.

Hubert H. Humphrey, III, Atty. Gen., Jeffrey S. Bilcik, Sp. Asst. Atty. Gen., St. Paul, for appellant.

Considered and decided by NIEREN-GARTEN, P.J., and FORSBERG and LESLIE, JJ., with oral argument waived.

## OPINION

FORSBERG, Judge.

This is an appeal by the Commissioner of Public Safety from an order rescinding the revocation of respondent's driver's license under the implied consent law, Minn.Stat. § 169.123 (1984). We reverse.

## FACTS

On March 20, 1985, at approximately 11:54 p.m., Police Officer Michael W. Johnson of the St. Louis Park Police Department stopped a motor vehicle driven by respondent on Excelsior Boulevard in St. Louis Park. There were passengers in the vehicle. Petitioner was smoking a cigarette when he was stopped by Johnson. At some time between 11:56 p.m. and 12 midnight, Johnson placed respondent in the rear seat of his squad car. Respondent did not have a lit cigarette in his possession and was not smoking when he was placed in the squad car by Johnson. Johnson did not handcuff respondent when he placed him in the squad car.

At approximately 12:10 a.m., Johnson placed respondent under arrest for driving while under the influence and transported him to the St. Louis Park Police Department for testing. Respondent's hands remained uncuffed during the trip to the police station.

Because Johnson was not working with a partner at the time, he was out of his squad car attending to other matters connected with the arrest for several minutes between the time he placed respondent in the rear seat and the time he left the scene with respondent to go to the St. Louis Park Police Department. Thus, Johnson did not have respondent under continuous observation during this period of time.

After a five-minute ride, Johnson arrived at the station with respondent at approximately 12:15 a.m. He then read the implied consent advisory to respondent. At approximately 12:17 a.m., another officer, who was a certified Intoxilyzer operator, administered a breath test to respondent, with the Intoxilyzer giving a reported value of .13 for respondent's test.

Respondent's expert witness, Dr. Richard Jensen, testified that in his opinion the test would be invalid if the driver was not continuously observed for at least 15 minutes prior to testing. He conceded that failure to observe the subject does not in itself affect the character of the sample.

Dr. Jensen further testified that the validity of the test would be affected if a person had been smoking within 15 minutes of the test. He could not say what effect recent cigarette smoking would have on the test results.

The trial court concluded that the Commissioner failed to prove the Intoxilyzer test of respondent's breath was valid, and rescinded the revocation of his driving privileges.

The trial court, noting that respondent's hands were not cuffed in the squad car and the officer was not in the car with him at all times, stated as follows:

> The possibility is too great in this situation that the petitioner could have placed something in his mouth without being detected by the officer. Even if the period of observation that occurred during the drive to the Department was adequate, the total observation period would still only have been seven minutes (12:10 to 12:17 a.m.), not the 15–20 minutes established by the [BCA Intoxilyzer administration checklist].

## ISSUE

Did the trial court err in requiring the Commissioner to show the full period of continuous observation of respondent prior to testing?

## ANALYSIS

■ The Commissioner has the burden of making a prima facie showing that the test results are trustworthy. *Kooi v. Commissioner of Public Safety*, 363 N.W.2d 487, 489 (Minn.Ct.App.1985). The party contesting the results then must come forward with evidence that the test was not reliable. *Id.*

■ A showing of trustworthy administration occurs when there is a showing of the steps necessary to ensure reliability. *Tate v. Commissioner of Public Safety*, 356 N.W.2d 766, 767–68 (Minn.Ct.App. 1984). It is not necessary that all the steps in the manual or checklist were followed. *Kooi*, 363 N.W.2d 487, 489 (25-step BCA checklist for the breathalyzer test). The trial court here found that, due to the failure to complete a 15–20 minute uninterrupted observation of the respondent, the Commissioner failed to meet its burden of proof.

■ The trial court erred in requiring the Commissioner to show a continuous 15-minute period of observation in order to make a prima facie showing of reliability. This court has consistently indicated that a deficiency in observation of the subject does not of itself invalidate the test, but merely gives the driver an opportunity to suggest why such a failure makes the test results unreliable. *See Kooi*, 363 N.W.2d 487, 489 (driver was observed but was in an adjacent room); *Tate*, 356 N.W.2d 766, 767–68 (driver was observed during bathroom visit but her escort did not testify).

■ We acknowledge there was a more serious departure from BCA standards of pre-testing observation in this case. Failure to properly observe the subject, however, does not invalidate the test results unless the subject in fact ingests or regurgitates a substance that affects the result. The burden is properly placed on the driver to present evidence of such an affecting substance. *Scheper v. Commissioner of Public Safety*, 380 N.W.2d 222 (Minn.Ct. App.1986) (undetected belching during observation).

■ The driver does not meet this burden by identifying a substance without showing that it raises the results of the test. *See Pasek v. Commissioner of Public Safety,* 383 N.W.2d 1 (Minn.Ct.App. 1986) (remnant of a pinch of chewing tobacco); *Hager v. Commissioner of Public Safety,* 382 N.W.2d 907 (Minn.Ct.App.1986) (chewing gum); *see also Noren v. Commissioner of Public Safety,* 363 N.W.2d 315, 318 (Minn.Ct.App.1985) (driver failed to show that low simulator reading "would unduly exaggerate the subject's test results").

■ Respondent's expert testified that cigarette smoking affects the validity of the test, but could not say what effect it would have. Respondent failed to meet his burden of showing that the test was not reliable.

### DECISION

The trial court erred in requiring a showing of a 15-minute period of continuous observation. Respondent failed to rebut the prima facie showing of reliability.

Reversed.